UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00121-MOC-DCK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **LESTER TARR,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on defendant's Notice of Appeal and Motion for Revocation of the Magistrate [Judge's] Order of Detention (#14). Having considered the defendant's motion, reviewed the pleadings (including defendant's Sealed Exhibit #15 (Medical Records from Grady Memorial Hospital)),[1] and listened to the digital recording of the detention hearing, the Court enters the following Order affirming the Order of United States Magistrate Judge David Keesler.

Defendant is charged in a three count indictment with conspiracy to commit wire fraud, wire fraud, and transactional money laundering. Indictment (#3). As alleged by the Grand Jury in the Indictment, defendant and others engaged in a scheme between 2013 and 2016 to defraud victims by getting them to invest money for the purported shipment of

---

[1] Defendant filed Exhibit 15 under seal without first filing a motion seeking leave to so file. In the future, counsel must first seek leave to file materials under seal. In this case, the Court allows the filing *nunc pro tunc* as the public's interest in review of such records is outweighed by the defendant's interest in healthcare privacy. The Court has, however, unsealed such exhibit to the extent necessary to review the instant motion, which relies in part on defendant's medical condition and his need for medication.

1

gold and United States currency to the United States, and then convincing victims to pay non-existent additional fees to further the shipment of the non-existent items. Further, the Grand Jury alleged that defendant, while lawfully residing in North Carolina, is a citizen of Liberia.

Review of the entirety of the evidence reveals that defendant returned to the United States on or about April 22, 2017, to seek additional medical care. Apparently, defendant broke his leg and sustained other injuries in a motorcycle accident in Liberia on or about April 12, 2017. Def. Ex #14-1 at 4.[2] The medical care he received in Liberia was inadequate (based on the hospital admission notes and on statements made by defendant's counsel at the hearing), prompting him to return to the United States for better medical care. Upon arrival at the Atlanta airport, defendant was arrested on the outstanding warrant issued three days earlier. Arrest Warrant (#4). After his arrest on April 22, defendant was taken to the Fulton County detention facility. While in custody, defendant fell and was transported by jail authorities to Grady Memorial Hospital for medical care and was admitted April 23, underwent a number of surgeries, and was discharged June 13, 2017. Id. at 20. The discharge notes provide, *inter* alia, that "Pt may go to jail. Return to ED if any signs of infection, fever over 101F, chills, vomiting, abdominal distention, bleeding…, chest pain or shortness of breath." Def. Ex. 14-1 at 23. Further, the Discharge Instructions provided that "You have not been prescribed any medication." Id. at 22. Close review of

---

[2] While this Court typically avoids discussion of defendants' medical conditions in public orders, defendant cites his medical condition and his need for additional care in support of this appeal. Thus, a discussion of such conditions and medications is included in this public Order. The Court notes that while the medical conditions discussed herein are serious, they are not medical conditions that tend to reveal intimate or potentially embarrassing facts as they involve injuries sustained in a motorcycle accident, an everyday occurrence.

defendant's Exhibit #15 reveals that, at the time of his admission to Grady, defendant had issued in his name what appears to be a Liberian Passport issued in March. Evidence presented at the hearing indicates that this Liberian passport was earlier seized by the FBI.

Upon discharge, defendant waived an identity hearing in the Northern District of Georgia, Waiver (#6-1), the government requested detention, and on June 14, defendant was committed to the Western District of North Carolina. Commitment (#6). Defendant appeared in this District for his Initial Appearance on June 27 and requested appointment of counsel. The government moved for detention and a detention hearing was calendared for June 30. After hearing evidence, Judge Keesler ordered defendant detained, holding that:

> The government's forecast of evidence here involves an international fraud Scheme involving the use of numerous aliases and a great deal of international travel and financial contacts with other nations. Probation recommends detention.

Detention Order (#11) at 3. In further support of that determination, Judge Keesler cited the strong weight of the evidence against the defendant, the possibility of lengthy incarceration, prior criminal history, significant family or other ties outside the United States, and use of aliases or false documents. Id. Judge Keesler also cited the reasons given on the record at the conclusion of the detention hearing. Id.

In appealing that decision, defendant argues that the evidence presented and the reasons relied on are insufficient to warrant his pretrial detention. Further, defendant cites to family ties in the greater Charlotte community and the need for medical care he contends he is not receiving at the jail. For the reasons that follow, the Court affirms the

determination of Judge Keesler.

On June 30, Judge Keesler held a detention hearing and entered an Order of Detention (#11). This Court notes that Judge Keesler did not check the relevant box under Part III, to wit, the box indicating defendant was being detained based on a "preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required." <u>See</u> Detention Order (#11) at 2. On the following page of the Detention Order, Judge Keesler did provide his reasons for detaining defendant, as discussed above. While it was error not to check the box on page two, it was harmless as Judge Keesler made clear on the record that his decision was based on a preponderance of the evidence and that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required.

Turning to the substance of the appeal, defendant argues in relevant part that he has ties to the community, that his criminal record is slight, that the penalties faced in this action are not so severe that he would flee, and that his medical conditions would be better met outside a jail setting.

As to defendant's ties to the community, all of the evidence indicates that defendant has two minor children in the district and that his mother lives in Atlanta. According to the PTR, defendant's father still resides in Africa. The government presented evidence by way of proffer that defendant has shown a propensity to abandon his ties in the United States when the possibility of incarceration arises. The government stated at the hearing that when an associate in his allegedly fraudulent enterprise was arrested in November 2016, defendant was on a flight to Monrovia the next week and did not return until the

4

necessity arose for receiving medical care in April 2017. Defense counsel argued that his decision to return to the United States was simply fortuitous as he could have gone to any other country for medical care, such as India. Counsel also argued that defendant has two minor children in the United States and that he would not leave them, despite occasionally leaving the country on business. Defendant also pointed to no history of failure to obey court orders or failure to appear in an earlier criminal proceeding.

As to defendant's criminal history, the Court agrees with defense counsel that it is slight, but notes that the offenses of conviction in state court also involved fraud and deceit. Further, if the Court's math is correct, it would appear that defendant left the country in November 2016 while likely still under state probation. PTR (#7) at 4.

As to the penalties faced in this case, defendant faces a maximum term of imprisonment of 20 years, fine, and a period of supervised release. While the Court finds no fault in the defense's argument that the Sentencing Guidelines will likely provide for a sentence lower than the maximum, to wit, a sentence that defendant can do with a foreseeable horizon for release, the Court having handled a number of similar fraud cases recently is mindful that the Guidelines are driven by loss. Thus, it is understandable that defendant did not earlier flee when faced with state felony conspiracy, false pretense, and uttering charges that netted him 45 days. Fraud charges in federal court are a much different creature, routinely exposing those convicted to multiple years' incarceration. As the PTR reflected that defendant had no verifiable employment except at a corporation he supposedly created, a reasonable assumption arises (for the limited purpose of this determination) that whatever income he had and supported his family with was procured

from the alleged fraudulent scheme. The PTR also reflects extensive international travel since 2012 to such destinations as Guana, Liberia, Thailand, Korea, and Japan, all on income of less than $4,000 a month, with which he also supported two minor children, who the Court notes are in the care and custody of their mother, who is estranged from defendant. The penalties are sufficient to cause a person in this defendant's circumstances to flee this country, possibly to a country where he remains a citizen. Those penalties are also sufficient to cause a defendant in such circumstances to sever his ties to this country, as it appears that defendant likely severed those ties in November 2016. While defendant's counsel argued that he is a permanent resident alien and aspires to United States citizenship, the Court notes that a "Permanent Resident Alien" is a misnomer as even a person with a Green Card can lose that status if convicted of a criminal act making that person removable. See 8 U.S.C. § 1101(a)(43)(M). While this Court professes no expertize on matters of immigration, it would appear that a conviction on these charges could result in a loss of status, making defendant subject to deportation based on one or more grounds of deportability. See "Immigration Consequences of Criminal Convictions: Padilla v. Kentucky," at 7, Office of Immigration Litigation, USDOJ –Civil Division (Rev. Nov. 2010). Such potential loss of status undermines defendant's argument that the potential sentence would provide no incentive for him to leave, as it appears that a conviction could well make defendant removable.

As to the medical issues, the defendant argued through counsel passionately that none of his medical needs are being addressed at the Mecklenburg County jail and that he is not receiving his long list of medications. Defendant contends that he is being held on

the non-medical floor of the jail. The government stated at the hearing that it reached out to the United States Marshal concerning medical concerns, and the Marshal knew of no issues. This Court's own *de novo* review of the medical records submitted by defendant from Grady do not support his contention inasmuch as the discharge notes provide for no medications, clear him to return to jail and engage in activities as tolerated, and provide a list of symptoms that would indicate a need to return to the emergency room. While a progress note in the record does indicate a doctor noting a need to consult with the jail concerning anti-coagulants available and a return to Warfarin™, such does not appear to be incorporated in a discharge note or in any list of prescribed medication. For all this Court knows, the need for an anti-coagulant no longer existed at the time of discharge. Finally, while defense counsel mentioned hospital concerns as to TB, the Court notes that such concern was based on defendant's recent travel in countries where that illness remains prevalent. Nothing in these records indicates that defendant tested positive or is in need of any medication for that illness.

***

In accordance with Section 3145(c), the court has promptly considered the appeal from the Detention Order (#11) in this case. The Bail Reform Act of 1984 (hereinafter "the Act") authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person pending trial, sentence, and appeal. In order to detain a defendant pending trial, the judicial officer must, by a preponderance of the evidence, "find[] that no condition or combination of conditions will reasonably assure the appearance of the person as required…." § 3142(e). The factors to be considered in

determining whether to release a defendant pending trial are set forth in section 3142(g). Those factors include:

> (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Stewart, 19 Fed. Appx. 46, 48 (4th Cir. 2001).

The Court has reviewed both the Detention Order and the recording of the detention hearing (#13). As did Judge Keesler, the Court has closely considered all the evidence of record. The Court has also considered defendant's appeal *de novo*. The Court notes that the defendant has pled not guilty and is presumed innocent of these crimes; however, the nature and circumstances of the alleged offenses involve allegations of fraud and deceit. That being the case, the Court must look at the weight of the evidence in the instant case and examine whether such evidence favors detention under the second Stewart factor. The Court finds that from a review of the Indictment and the proffer of the government that the weight of the evidence against defendant is strong and does favor detention.

The history and characteristics of the person also favor detention. In reviewing the hearing testimony, it is clear that: (1) defendant has family and friends in this District and in Georgia; (2) that he cares for those family members and that those family members care for him; and (3) that he wants to be a United States citizen as his children are both citizens. The Court is not, however, convinced that he is "going absolutely nowhere" as stated by his co-counsel Mr. Ezeh at the hearing. Past is usually prologue, and defendant's abrupt departure from the United States in November 2016 when an associate was arrested speaks

volumes to the likelihood that he would again flee. Indeed, it appears that defendant returned only when the lack of quality medical care threatened his life. While defense counsel pointed to his return to the United States when he had the ability to go anywhere in the world for care as evidence of his lack of a guilty mind or intent to flee, the Court finds it more likely that defendant's decision to return to the United States was bolstered by a belief that no charges had been lodged against him as nearly six months had passed since his the arrest of an alleged associate, a scenario made possible by the sealing of the Indictment.

In the end, the Court deals with facts on the ground, just as Judge Keesler did. By a preponderance of the evidence, this Court is convinced that defendant poses a significant risk of flight based on past conduct in leaving the United States in November, the seriousness of the charges he now faces which carry serious penalties dependent on loss amounts and could result in loss of immigration status, strong ties to other countries, travel to other countries, charged offenses involving fraud and deceit which would reasonably call into question any promise of return, and a prior state-court conviction of offenses involving deceitful conduct. PTR (#7) at 4.

In reviewing the recording of the hearing, the Court noted that a number of friends and family appeared and stood in his support. The willingness of the defendant's friends and family to act as third-party custodians is noted, but the Court is not convinced that such commitment would assure defendant's return to Court as he has a track record of extensive travel and being away from family for extended periods of time.

The Court is also satisfied that defendant's medical needs are adequately being

cared for while in the custody of the United States Marshal. While counsel argued that defendant is not receiving his extensive list of medications, the discharge summary from Grady provides not support for that contention. Apparently, defendant reported to the pretrial services officer that he believes he should be receiving an anti-coagulant for a blood clot in his leg and medication for Hypertension. The Court, in an abundance of caution, will bring those concerns to the attention of the United States Marshal even though the government has already inquired and the medical records are inapposite to such contention.

\*\*\*

After *de novo* review, and having considered the Section 3142(g) factors, this court concludes as did Judge Keesler that, by a preponderance of the evidence, no condition or combination of conditions will reasonably assure the appearance of Mr. Tarr. 18 U.S.C. § 3142(e). Accordingly, the court will deny the defendant's motion and affirm the determination of the magistrate judge in its entirety.


**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Revocation of Detention Order and Request for Expedited Hearing (#14) is **DENIED**, and the Order of Detention (#11) in this matter is **AFFIRMED** for the reasons stated above**.**

\*\*\*

The Clerk of Court is instructed to forward a copy of this Order and Docket Entry (#15) to the United States Marshal so that an appropriate inquiry can be made as to whether defendant is receiving prescribed medications. Accordingly, Docket Entry (#15) is

**UNSEALED** for the limited purpose of United States Marshal/jail medical staff review to determine what, if any, medications were prescribed for Mr. Tarr post-discharge. The Court draws to the Marshal's attention page 22 of that exhibit, which apparently provides for "no medications" upon discharge and page 23, which lists conditions/symptoms which would warrant a "Return to E[mergency] D[epartment]."

Signed: July 12, 2017

Max O. Cogburn Jr
United States District Judge